Joseph ACHTMAN, Shirley Achtman, Blair Ambach, Theodore Andreozzi, Sondra Baer–Miller, for the estate of Jenny Baer, Sandy Berkowitz, Joseph Berlinger, Elissa Berlinger, Gustave Birnberg, Faith Birnberg, George Ca-

gen, Yvette Cohen, Selma Dauber, Martin Dauber, Isabel Ezersky, Paul Ezersky, Dorothy Feigenbaum, Richard Flynn, individually and for the estate of Herbert Flynn, Dorothy Gatson, Erwin Gatson, Gunther Glaser, Grace Gluck, Saul Gluck, Bernard Greenberg, Rona Greenberg, Brian Henry, Albert Hodes, Arnold Jacobs, Hagop Jamgochian, Shamiram Jamgochian, Harry Kaiserman, Lawrence Kessler, Carl Kevorkian, Linda Tabris, for the estate of Bernice Kramera, Frederick H. Kroll, William Lenney, Sylvia Levine, Sidney Levine, Doris Levy, Lawrence Lindy, Anthony Longo, Joseph A. Longo, Harry Mandelbaum, Blanche Mandelbaum, Henry Medvin, Selma Medvin, Carol Peyser, Renee Pfau, Hyman Rock, Phillip Ross, Lloyd Schildcrout, Albert Sheridan, Eleanor Silverstein, Stanley Singer, Joe Singer, Kenneth Smith, Harold Sommers, Melvin Spencer, Ben Spencer, Russell Stott, Anne Stott, Paul Trusik, Harriet Wallshein, S. Joseph Wallshein, Eleanor Weidemeyer, Harry Weinstein, Edith Weinstein, Elaine Zinberg, Genia Zwirn, and David Zwirn, Plaintiffs–Appellants,

v.

KIRBY, McINERNEY & SQUIRE, LLP and Bernstein, Litowitz, Berger & Grossman, LLP, Defendants–Appellees.

Docket No. 04–5473–cv.

United States Court of Appeals, Second Circuit.

Argued: Sept. 8, 2005.

Last Submission: June 16, 2006.

Decided: Sept. 25, 2006.

Arnold E. DiJoseph, III, DiJoseph & Portegello, P.C., New York, N.Y., for Plaintiffs–Appellants.

Bertrand C. Sellier, Proskauer Rose, LLP, New York, N.Y. (Tom Stein, on the brief), for Defendants–Appellees.

Before CARDAMONE, McLAUGHLIN, and POOLER, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Plaintiffs brought a putative class action against their former attorneys, Kirby, McInerney & Squire, LLP ("Kirby") and Bernstein, Litowitz, Berger & Grossman,

LLP ("Bernstein") in the United States District Court for the Southern District of New York (Sprizzo, *J.*). Both firms had served as class counsel in a separate earlier securities class action and it is the firms' conduct in litigating the securities action that is now alleged by the plaintiffs to have constituted malpractice. The district court dismissed the malpractice complaint for failure to state a claim after determining that defendants' actions were reasonable as a matter of law.

We remanded to the district court for the limited purpose of having it explain its basis for exercising subject matter jurisdiction over the action. The district court subsequently identified three possible bases for subject matter jurisdiction: (1) the terms of an injunction it entered in the underlying securities class action pursuant to its authority under 28 U.S.C. § 1651; (2) diversity jurisdiction if non-diverse plaintiffs are dismissed as unnecessary parties; *and* (3) supplemental jurisdiction under 28 U.S.C. § 1367(a). While we are querulous as to the first two contentions, we agree that supplemental jurisdiction exists. Accordingly, we now reach the merits and affirm the judgment of the district court.

## BACKGROUND

In April 1996, the first of several class action complaints were filed in federal courts against the Bennett Funding Group ("BFG"), an equipment finance company based in Syracuse, New York. The complaints alleged that BFG and other entities had committed securities fraud by swindling investors out of more than $500 million through an elaborate "Ponzi" scheme involving sham contracts and chimerical financial statements. The various BFG actions were ultimately referred by the Judicial Panel on Multi–District Litigation to the United States District Court for the

Southern District of New York for pretrial consolidation before Judge John E. Sprizzo.

In August 1996, Kirby and Bernstein were appointed co-lead counsel in the consolidated BFG action, and several months later the district court certified a class of over 20,000 investors in BFG securities. A Notice of Pendency was mailed to the class, advising them of the nature of the suit and listing all parties named as defendants. Conspicuously absent from the catalog of alleged wrongdoers was the accounting firm of Arthur Andersen & Co. ("Andersen"), which had audited BFG's allegedly misleading 1989 and 1990 financial statements.

The district court ultimately approved a $125 million settlement with BFG's insurers and a $14 million settlement with the accounting firm of Mahoney Cohen & Co. ("Mahoney Cohen"), which had succeeded Andersen as BFG's auditor. On three occasions in approving fee applications by Kirby and Bernstein, the district court repeatedly lauded the "novel and creative" approach of the firms, which produced an "exceptional result for the class." Plaintiffs here-who were also plaintiffs in the BFG securities class action-did not object to either settlement or the award of attorneys' fees.

Meanwhile, since 1996, other law firms had been bringing individual actions against Andersen on behalf of BFG investors and had met some success. When some of these firms eventually attempted to bring a class action against Andersen in the Southern District of New York in May 1999, the district court dismissed the claims on statute of limitations grounds.

In April 2002, the law firm of Chikovsky & Shapiro began contacting BFG litigation class members about pursuing a possible malpractice action against Kirby and Bern-

stein, specifically for their failure to sue Andersen. Kirby and Bernstein quickly moved for an injunction prohibiting Chikovsky & Shapiro and related firms from contacting class members without court approval. In July 2002, Judge Sprizzo issued an injunction (the "Injunction") barring such communications and prohibiting Chikovsky & Shapiro, related firms, and members of the BFG securities class from "[f]iling and/or proceeding with any legal malpractice claim against Class counsel relating to losses incurred in Bennett Funding securities in courts other than in this Court."

Foreclosed by the statute of limitations from suing Andersen itself, plaintiffs brought the present malpractice putative class action in December 2002 on behalf of BFG litigation class members against Kirby and Bernstein in the Southern District of New York.[1] Plaintiffs alleged that defendants failed to: (1) name Andersen as a defendant in the BFG class action litigation; (2) list Andersen as a party who could be sued-but was not-in the Notice of Pendency; and (3) advise the plaintiffs as to the statute of limitations on claims against Andersen.

In September 2004, the district court dismissed plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Achtman v. Kirby, McInerney & Squire, LLP*, 336 F.Supp.2d 336, 338 (S.D.N.Y.2004). The court acknowledged that some individual BFG investors had already sued Andersen in separate actions and had reached settlements. It determined, however, that because of the doctrinal uncertainty surrounding auditor securities fraud liability

and because BFG securities issued during Andersen's tenure had been largely paid down by the time the BFG litigation started, defendants' decision not to sue Andersen was reasonable as a matter of law. *Id.* at 340–41.

When plaintiffs appealed to this court, we expressed some doubt as to whether subject matter jurisdiction existed over the malpractice claims. We instructed the parties to supplement their merits briefs with letter briefs on the jurisdictional issue. Concerned that the complaint based jurisdiction solely on the Injunction's requirement that any legal malpractice action be brought in the Southern District of New York, we remanded to allow the district court to clarify its basis for exercising subject matter jurisdiction over this suit. *See Achtman v. Kirby, McInerney & Squire, LLP*, 150 Fed.Appx. 12, 15 (2d Cir.2005).

On remand, the district court identified three possible bases for subject matter jurisdiction:

- *First*, the district court stated that it had the authority to issue the Injunction under 28 U.S.C. § 1651 (the "All Writs Act"), and it "therefore, under the terms of the Injunction Order, . . . has subject matter jurisdiction over the [malpractice] action." *Achtman v. Kirby, McInerney & Squire, LLP*, 404 F.Supp.2d 540, 544–45 (S.D.N.Y.2005).

- *Second*, the court noted that diversity jurisdiction could be salvaged pursuant to Federal Rule of Civil Procedure 21 if all non-diverse plaintiffs were dis-

---

1. As the district court properly noted in response to our query, the complaint indicates that the malpractice action was brought by "CHIKOVSKY & SHAPIRO, P.A.," one of the firms subject to the Injunction. *Achtman v. Kirby, McInerney & Squire, LLP*, 404 F.Supp.2d 540, 544 (S.D.N.Y.2005). Plaintiffs' counsel on this appeal, DiJoseph & Portegello, P.C., was also their "Trial/Local Counsel" before the district court, and so was subject to the Injunction as an entity acting in concert with Chikovsky & Shapiro. *Id.*

missed as unnecessary parties. *Id.* at 547–48.

- *Third,* the district court analogized the present malpractice action to a fee dispute and found that supplemental jurisdiction existed pursuant to 28 U.S.C. § 1367. *Id.* at 546–47.

Plaintiffs raise both the jurisdictional argument and the dismissal of their complaint for failure to state a claim. We (a) find that supplemental jurisdiction exists over the malpractice claims, *and* (b) affirm the district court's dismissal on the merits.

## DISCUSSION

### I. *Subject Matter Jurisdiction*

■ "In reviewing a district court's determination of whether it has subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo." *Gualandi v. Adams,* 385 F.3d 236, 240 (2d Cir.2004) (citing *London v. Polishook,* 189 F.3d 196, 198 (2d Cir.1999)).

■ "The power of the inferior federal courts is 'limited to those subjects encompassed within a statutory grant of jurisdiction.'" *Bechtel v. Competitive Tech., Inc.,* 448 F.3d 469, 471(2d Cir.2006) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)). Although an exercise of "judicial power [may be] desirable or expedient," a suit may not proceed absent statutory authorization. *United States v. Town of N. Hempstead,* 610 F.2d 1025, 1029 (2d Cir. 1979). In short, jurisdiction cannot simply be "expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

The district court here identified three bases for subject matter jurisdiction. We address each in turn.[2]

### A. *Jurisdiction Based on the Terms of the Injunction*

■ The district court appears to have held that the mere existence of the Injunction establishes subject matter jurisdiction over this malpractice action because the Injunction requires the malpractice claims to be brought there. We are not persuaded.

As a threshold matter, we note that neither party to the malpractice suit has appealed the issuance of the Injunction itself. Thus, the Injunction is relevant only on the collateral-but important-question as to whether it may establish an independent basis for subject matter jurisdiction over the present malpractice suit.

■ The All Writs Act empowers federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). We have recognized that the Act authorizes injunctions barring state court actions that could impinge upon a federal court's "jurisdiction or authority over an ongoing matter." *In re Baldwin–United Corp.,* 770 F.2d 328, 335 (2d Cir.1985). However, the All Writs Act "does not, by its specific terms, provide federal courts with an independent grant of jurisdiction." *Syngenta Crop Prot., Inc. v. Henson,* 537 U.S. 28, 33, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002). Instead, it limits a court to "issuing process 'in aid of' its existing statutory jurisdiction; the Act does not enlarge that jurisdiction." *Clinton v. Goldsmith,* 526

2. We do not address whether ancillary enforcement jurisdiction would also exist over these claims. *See, e.g., Garcia v. Teitler,* 443 F.3d 202, 210 n. 3 (2d Cir.2006) (noting that such jurisdiction may sometimes be "more appropriately characterized as an exercise of a court's inherent power").

U.S. 529, 534–35, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999) (quoting § 28 U.S.C. 1651(a)).

Therefore, even assuming *arguendo* that the Injunction properly prohibited the commencement of malpractice actions in other fora, the Injunction cannot itself furnish *jurisdiction* over claims that do not fall within one of the traditional statutory grants. *See, e.g.*, 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship). To hold otherwise would make mincemeat of the limited grants of jurisdiction bestowed upon us. *See Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) ("The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded.").

B. *Diversity Jurisdiction*

The district court also maintained that it could "salvage" subject matter jurisdiction by creating diversity jurisdiction through the dismissal of thirteen non-diverse named plaintiffs. *See Achtman,* 404 F.Supp.2d at 547–48. This is unclear from the record.

■ It is true that in a class action only the named plaintiffs need be diverse with the defendants to establish diversity jurisdiction. *See Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). A federal court may "salvage jurisdiction by removing, pursuant to Fed. R.Civ.P. 21, a dispensable non-diverse party from a suit." *Herrick Co. v. SCS Commc'ns, Inc.,* 251 F.3d 315, 330 (2d Cir.2001). This may be done on appeal as well. *See Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 837–38, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).

■ Nevertheless, at least one remaining named plaintiff must meet the $75,000 amount-in-controversy requirement for the exercise of diversity jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 125 S.Ct. 2611, 2615, 162 L.Ed.2d 502 (2005). Once that requirement is met, supplemental jurisdiction exists over the claims of the remaining diverse plaintiffs. *Id.*

■ On remand, the parties stipulated to the citizenship information for all the named plaintiffs and defendants. The stipulation concluded in paragraph two that "[t]hirteen (13) of the seventy-three (73) named plaintiffs are not diverse . . . [but] sixty (60) of the named plaintiffs are citizens of states other than the states of which the defendants are citizens." The parties also agreed that "[o] ne or more of the named plaintiffs referred to in paragraph 2 has asserted claims in this action in excess of $75,000, exclusive of interest and costs."

Unhappily, the stipulation does not state *which* plaintiffs have asserted claims in excess of $75,000. There are two categories of plaintiffs mentioned in paragraph two of the stipulation: diverse plaintiffs and non-diverse plaintiffs. If the only claims in excess of $75,000 were made by non-diverse plaintiffs, there is no basis for diversity jurisdiction in this case. Therefore, it is not clear from the record that diversity jurisdiction can be salvaged.

C. *Supplemental Jurisdiction*

■ Finally, the district court found that it had supplemental jurisdiction over the malpractice claims because it "has original jurisdiction over the underlying [securities] action." *Achtman,* 404 F.Supp.2d at 546. We agree.

The relevant portion of the supplemental jurisdiction statute provides as follows:

[I]n any civil action of which the district courts have original jurisdiction, the dis-

trict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

As a threshold matter, we recognize that some district courts have refused to rely on the existence of subject matter jurisdiction in one action to provide supplemental jurisdiction over claims in a related action. *See, e.g., Keene v. Auto Owners Ins. Co.,* 78 F.Supp.2d 1270, 1274 (S.D.Ala.1999) ("[S]ection 1367 applies only to claims within a single action and not to claims within related actions."); *Sebring Homes Corp. v. T.R. Arnold & Assocs., Inc.,* 927 F.Supp. 1098, 1101–02 (N.D.Ind.1995) ("Section 1367 provides no original jurisdiction over a separate ... but related suit."). This distinction, however, has never troubled us. *See, e.g., Alderman v. Pan Am World Airways,* 169 F.3d 99, 101–02 (2d Cir.1999) (supplemental jurisdiction over contract dispute based on jurisdiction over settled wrongful death action).

Turning to the terms of the statute, we have held that disputes are part of the "same case or controversy" within § 1367 when they "derive from a common nucleus of operative fact." *Promisel v. First Am. Artificial Flowers Inc.,* 943 F.2d 251, 254 (2d Cir.1991) (internal citation omitted). The "common nucleus" standard hails originally from *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), a pre-§ 1367 case addressing pendent jurisdiction. When both pendent and ancillary jurisdiction were codified in 1990 as § 1367, however, the "common nucleus"

test was retained by nearly all the Circuits to interpret the statute's "case or controversy" language. *See, e.g.,* 16 Moore & Pratt, *Moore's Federal Practice* § 106.21[1] (3d ed.1998) (collecting cases).

In determining whether two disputes arise from a "common nucleus of operative fact," we have traditionally asked whether "the facts underlying the federal and state claims substantially overlapped ... [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 704 (2d Cir. 2000) (internal citations omitted). "This is so even if the state law claim is asserted against a party different from the one named in the federal claim." *Briarpatch Ltd. v. Phoenix Pictures, Inc.,* 373 F.3d 296, 308 (2d Cir.2004).

Even before the enactment of § 1367, we had recognized the existence of some form of derivative subject matter jurisdiction over analogous state law fee disputes arising from proper federal controversies. In *Cluett, Peabody & Co., Inc. v. CPC Acquisition Co.,* 863 F.2d 251 (2d Cir. 1988), we affirmed a district court's exercise of common law ancillary jurisdiction over state law claims regarding entitlement to legal fees that accrued during the course of "poison pill" litigation in federal court. *Id.* at 256. We noted that "[i]t is well settled that '[a] federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes ... between litigants and their attorneys when the dispute relates to the main action.'" *Id.* (quoting *Petition of Rosenman Colin Freund Lewis & Cohen,* 600 F.Supp. 527, 531 (S.D.N.Y. 1984) (internal citation omitted)); *see also Chesley v. Union Carbide Corp.,* 927 F.2d 60, 65 (2d Cir.1991) (ancillary jurisdiction available over fee disputes when initial litigation is no longer before the court).

With the codification of much of common law ancillary jurisdiction into § 1367, we repeated in *Alderman v. Pan Am World Airways*, 169 F.3d 99 (2d Cir.1999), that fee disputes still remained proper subjects of derivative jurisdiction. We now simply treated it under a new rubric: supplemental jurisdiction. In *Alderman*, we affirmed the district court's exercise of § 1367 supplemental jurisdiction over a contingency fee contract dispute arising from a wrongful death action properly within the court's subject matter jurisdiction. *Id.* at 101–02. Although we did not conduct an explicit "common nucleus" analysis, we noted that the district court was "already familiar with the relevant facts and legal issues." *Id.* (citing *Cluett* and *Chesley* ).

Similarly, in *Itar–Tass Russian News Agency v. Kurier, Inc.*, 140 F.3d 442 (2d Cir.1998), we assumed that the district court had the power to exercise supplemental jurisdiction over a fee dispute because it had already "obtained total familiarity with the subject matter of the [underlying] suit and the professional services of the moving parties thereon and of the virtual totality of all the compensation arrangements contended for and disputed." *Id.* at 445. After identifying these clear hallmarks of a common nucleus of operative fact, we focused exclusively on the district court's discretionary decision to decline jurisdiction. *Id.* at 445–448.

We are compelled by this unbroken line of cases to find that the facts underlying the present malpractice claims and the underlying securities claims "substantially overlap[ ]," creating a common nucleus of operative fact. *Lyndonville Sav. Bank & Trust*, 211 F.3d at 704. The district court has managed the consolidated BFG securities class actions since 1996 and has approved a series of settlements totaling more than $166 million since that time. In the course of approving those settlements and the resulting fee awards, the court found defendants' representation reasonable and adequate several times. *See* Fed. R. of Civ. P. 23(h).

The district court was thus well-placed to consider the issues that would arise in the malpractice action, including questions as to whether Kirby and Bernstein asserted all appropriate claims. In addition, the district court was intimately familiar with Kirby and Bernstein's overall strategy and the time they spent pursuing their clients' interests. As we noted in *Cluett*, "the lower court's familiarity with the subject matter of the suit lent support to the exercise of jurisdiction . . . [because] familiarity with the amount and quality of work performed by [counsel] would enormously facilitate rapid disposition of a fee dispute, while a great deal of the record would have to be considered anew and relitigated in a state court unfamiliar with the proceedings." 863 F.2d at 256. The same is true here.

While there would surely be some facts at issue in the malpractice action that were not directly implicated in the BFG securities litigation itself, *e.g.*, the substance of communications between class counsel and the named plaintiffs, the same was true in our fee dispute cases. We therefore follow their lead and find supplemental jurisdiction over these claims.[3]

## II. *Merits of the Malpractice Claims*

Having established that supplemental jurisdiction exists over this action, we now turn to the bottom line question of whether the plaintiffs have stated a claim upon

---

**3.** It may not be amiss to note that the constitutional language conferring federal jurisdiction speaks of "cases," not questions. *See* U.S. Const. art. III, § 2.

which relief can be granted. We agree with the district court that they have not.

■■■ "We review de novo the grant of a motion to dismiss under Rule 12(b)(6), accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (internal citation omitted). However, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d. Cir. 2002) (internal citation omitted). The New York Court of Appeals has made it clear that "a cause of action for legal malpractice pose[s] a question of law which [can] be determined on a motion to dismiss." *Rosner v. Paley*, 65 N.Y.2d 736, 738, 492 N.Y.S.2d 13, 481 N.E.2d 553 (1985).[4]

■■■ To state a claim for legal malpractice under New York law, a plaintiff must allege: (1) attorney negligence; (2) which is the proximate cause of a loss; *and* (3) actual damages. *Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 170 A.D.2d 108, 114, 573 N.Y.S.2d 981 (1991). Here, we need proceed no further than the first hurdle, as the plaintiffs have failed to allege negligent conduct by Kirby and Bernstein.

■■■ To properly plead negligence, a party must aver that an attorney's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession."

*Grago v. Robertson*, 49 A.D.2d 645, 646, 370 N.Y.S.2d 255 (1975). A complaint that essentially alleges either an "error of judgment" or a "selection of one among several reasonable courses of action" fails to state a claim for malpractice. *Rosner*, 65 N.Y.2d at 738, 492 N.Y.S.2d 13, 481 N.E.2d 553. Generally, an attorney may only be held liable for "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." *Bernstein v. Oppenheim & Co.*, 160 A.D.2d 428, 430, 554 N.Y.S.2d 487 (1990).

■■ Here, plaintiffs marshal three purportedly negligent acts by defendants: (1) the failure to name Andersen as a defendant in the underlying BFG securities litigation; (2) the failure to list Andersen as a party who could be sued-but was not-in the class action Notice of Pendency; *and* (3) the failure to advise plaintiffs of the statute of limitations on claims against Andersen. None of these actions constituted negligence under New York law.

As the district court recognized, defendants made the decision not to sue Andersen in the BFG securities class action for a number of legitimate reasons. At the time the suit was filed, there was serious doubt as to auditor securities liability under *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Damages were similarly uncertain because the BFG securities issued on Andersen's watch had been largely paid down by the time of the BFG suits.[5] Finally, when

---

**4.** As we have noted, "the Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law." *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 541 n. 1 (2d Cir.1956). Thus, we apply New York malpractice law, even though our jurisdiction rests solely upon § 1367. *See, e.g.,*

*United Mine Workers*, 383 U.S. at 726, 86 S.Ct. 1130.

**5.** This distinguishes defendants' decision to pursue claims against Mahoney Cohen, which succeeded Andersen as BFG's external auditor. Because Mahoney Cohen's retention only shortly preceded the commencement of the securities class action, securities issued

other law firms brought individual actions against Andersen as part of the BFG litigation, the district court threatened Rule 11 sanctions. Although Andersen eventually settled some of the individual actions, *none* of the twenty-five class action suits filed by twenty-five different law firms in the BFG securities litigation named Andersen as a defendant. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir.1991) (judicial notice may be taken of the contents of documents in other legal proceedings). Kirby and Bernstein therefore acted reasonably in not suing Andersen.

■ Similarly, it was reasonable for Kirby and Bernstein not to comment on Andersen in the Notice of Pendency. A Notice of Pendency need only contain "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class." *In re Nissan Motor Corp. Antitrust Litig.,* 552 F.2d 1088, 1105 (5th Cir.1977). Plaintiffs can point to no authority requiring class counsel to describe potential claims against parties not being sued. *Cf.* Fed.R.Civ.P. 23(c)(2)(B)(reciting notice requirements); 7AA Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1787 (3d ed.2005) (same). Andersen's absence from the notice sufficiently alerted class members that any relief against the firm would have to be pursued independently. Thus, defendants' decision not to comment on Andersen was reasonable.

Finally, it was reasonable for Kirby and Bernstein not to advise plaintiffs as to the statute of limitations on claims they were not pursuing. The Notice of Pendency informed the members of the class that Andersen was not being sued and the class

members were thus equipped to decide whether to sue Andersen individually. Plaintiffs cannot now hold their class action attorneys responsible for the consequences of plaintiffs' individual decisions not to press claims against Andersen outside the class action suit.

Accordingly, plaintiffs have failed to state a claim for malpractice against Kirby and Bernstein.

### CONCLUSION

Because supplemental jurisdiction exists over these claims and plaintiffs have failed to plead facts demonstrating that defendants' actions were unreasonable as a matter of law, the judgment of the district court dismissing the complaint on the merits is AFFIRMED.

during its tenure were not as likely to have

been paid down by the time of suit.