### AVONDALE FEDERAL SAVINGS BANK, Plaintiff–Appellant,

v.

### AMOCO OIL COMPANY, a Maryland corporation, Defendant–Appellee.

No. 98–2003.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1998.

Decided March 11, 1999.

Johnine J. Brown (argued), Julie D. Melvin, Brownmartin P.C., William M. McErlean, Chicago, IL, for plaintiff-appellant.

Vincent S. Oleskiewicz (argued), Baker & McKenzie, Chicago, IL, for defendant-appellee.

Before BAUER, DIANE P. WOOD, and EVANS, Circuit Judges.

EVANS, Circuit Judge.

Amoco Oil Company owned and operated a gas station in Lake Forest, Illinois, from 1926 to 1970. Amoco sold the property to George and Margaret Herman, who in turn sold it to First National Bank of Lake Forest, which in turn sold it to Lake Forest Savings and Loan Association. Avondale Federal Savings Bank took title to the property in 1982 when it merged with Lake Forest Savings and Loan.

In late 1995 Avondale negotiated to sell the property to First Chicago Building Corporation—the first in a long line of parties to insist (wisely, in hindsight) on acquiring the property with a clean bill of health. To satisfy its obligations under the purchase agreement with First Chicago, Avondale had an environmental investigation done on the property, and the study revealed petroleum contamination in the soil. Avondale traced the contamination to Amoco and served Amoco and the appropriate governmental agencies with a 90–day notice letter as required by the Resource Conservation and Recovery Act. Neither the government nor Amoco responded, and in May 1996, after the 90–day notice period expired, Avondale sued Amoco seeking an injunction under § 6972(a)(1)(B) of RCRA requiring Amoco to clean up the property. Later that month, before the court ordered any relief, Avondale excavated and removed three underground storage tanks, associated piping, and a hydraulic oil reservoir from the property. By November 1996 Avondale had cleaned up the soil and remediated the property to meet the Illinois EPA's residential standards, so the IEPA issued a "No Further Remediation Letter" signifying that the property was clean and absolving Avondale of any further remediation responsibility. Avondale's sale to First Chicago then proceeded without a hitch.

Back in court, Avondale changed its request for an injunction (which was no longer

needed because the property was cleaned up) to a claim for restitution to recover the value of the benefit it conferred on Amoco by cleaning up the mess. Avondale still sought an injunction requiring Amoco to clean up any further contamination that might be caused by off-site migration. Amoco moved for summary judgment, arguing that Avondale failed to satisfy RCRA's "imminent and substantial endangerment" requirement. *See* 42 U.S.C. § 6901 *et seq.* The district court granted Amoco's motion. On Avondale's claim for restitution for the on-site contamination cleanup, the court found that it was precluded from awarding the requested relief under *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). On Avondale's claim for an injunction for off-site contamination, the court found that any threat was not imminent.

On appeal Avondale makes two arguments. First, it argues *Meghrig* does not preclude the relief sought because it cleaned up the property *after* filing its citizen suit and *Meghrig* precludes relief only if the property is cleaned up *before* suit is filed. Second, Avondale argues the district court was wrong to conclude that offsite migration posed no imminent threat. The threat of harm was imminent, Avondale argues, though the effects of the harm might not be felt until later. We are not persuaded by either of these arguments.

█ In *Meghrig* the Supreme Court painstakingly analyzed the language of RCRA's citizen suit provision and concluded that RCRA "is not directed at providing compensation for past cleanup efforts." 516 U.S. at 484, 116 S.Ct. 1251. Instead, RCRA offers a private citizen a choice of two remedies: "a mandatory injunction, i.e., one that orders a responsible party to 'take action' by attending to the cleanup and proper disposal of toxic waste, or a prohibitory injunction, i.e., one that 'restrains' a responsible party from further violating RCRA." *Id.* "Neither remedy, however, ... contemplates the award of past cleanup costs, whether these are denominated 'damages' or 'equitable restitution.'" *Id.* We think this precise language in *Meghrig* bars the remedy Avondale seeks.

But Avondale has latched onto the language in the last paragraph of *Meghrig* where the Court also said: "Without considering whether a private party could seek to obtain an injunction requiring another party to pay cleanup costs which arise *after* a RCRA citizen suit has been properly commenced, ... or otherwise recover cleanup costs paid out *after* the invocation of RCRA's statutory process, we agree with the *Meghrig* that a ·private party cannot recover the cost. of a past cleanup effort under RCRA...." *Id.* at 488, 116 S.Ct. 1251 (emphasis added). This is the precise language Avondale thinks saves it from defeat.

We think reading this sentence in isolation and to the exclusion of the rest of the opinion—which is what we have to do for Avondale to prevail—betrays the Supreme Court's resounding message. The entire opinion, save this one sentence, emphasizes that in interpreting RCRA we need to take Congress at its word and that we must "be chary of reading" additional remedies into a statute that, like RCRA, expressly provides for a particular remedy. *Id.* at 488, 116 S.Ct. 1251 (quoting *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 14–15, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). The dissent is willing to read an additional remedy into RCRA—namely, reimbursement of cleanup costs. But we are not. Congress deliberately limited RCRA's remedies to injunctive relief—more specifically, injunctive relief obtained before the property is cleaned up, while the danger to health or the environment is "imminent and substantial." 42 U.S.C. § 6972(a)(1)(B). Neither *Meghrig* nor RCRA can be read to allow a party to recover cleanup costs. And, neither *Meghrig* nor RCRA exempts from that principle cleanup costs incurred after RCRA is invoked. Given the Supreme Court's admonition that we must strictly follow RCRA's statutory scheme, we are unwilling to accept Avondale's invitation to expand RCRA's remedial reach. Quite simply, RCRA's remedial scheme could have worked here. Avondale properly invoked the scheme by filing suit for an injunction before taking any action to clean up the property. But Avondale got antsy and chose not to wait for the

wheels of justice to spin. It made a business decision to clean up the property quickly so it could close the deal with First Chicago. That decision allowed Avondale to take advantage of a business opportunity that may very well have evaporated by the time any injunction issued. But it doesn't change RCRA's remedial scheme.

In short, although *Meghrig* may have left an opening for private remedies to redress cleanup costs that arise after a RCRA citizen suit is filed, Avondale cannot squeeze through in this instance. No matter how it categorizes its claim, Avondale wants to get back from Amoco the money it spent to clean up the contamination it thinks Amoco caused. While this certainly seems fair, it is simply not allowed under RCRA. Avondale may still get money from Amoco—but not in this court and not under RCRA. Avondale has a number of state law recovery theories available to it and, in the end, justice can be done.

█ Avondale's claim for an injunction requiring Amoco to clean up off-site contamination also fails, though for a different reason. Here, Avondale sought the right relief—a mandatory injunction—but the claim was premature under RCRA. Avondale's own expert testified that "**if excavation is ever performed** under the streets adjacent to the property, petroleum contamination will be found at levels requiring abatement to protect health and the environment." (Emphasis added.) Thus off-site contamination may very well present an imminent and substantial danger at some point, but it does not present such a danger right now.

For these reasons, we affirm the district court's entry of summary judgment in Amoco's favor.

DIANE P. WOOD, Circuit Judge, concurring in part and dissenting in part.

No one would disagree that the result the majority feels constrained to reach today creates perverse incentives for landowners whose property has been contaminated by another party. Feeling bound by the language of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), and the Supreme Court's decision in *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996), the majority concludes that landowners who comply with all prerequisites to a suit under RCRA and who file a timely action must nonetheless refrain from conducting any clean-up operations until a court has had time to rule on a motion for an injunction, unless the landowner wants to be stuck with the bill and provide a windfall to the polluter. In my view, nothing in either the statute or *Meghrig* compels such an undesirable result, and I dissent from that part of the court's holding. For the reasons stated in the court's opinion, I agree that Avondale was not entitled to an injunction requiring Amoco to clean up off-site contamination, and I therefore concur in that part of the judgment.

My first point of disagreement is a fundamental one. The majority sees no distinction between the situation presented in *Meghrig*, in which the property owner cleaned up its property *before* filing suit, and our case, in which Avondale waited to clean up the property until *after* it filed its RCRA action. I disagree. The pre-filing period has independent significance under the statutory scheme Congress created, and a person who tries to circumvent that scheme (like the *Meghrig* plaintiff) has nothing left but a suit for reimbursement of monies spent by the time litigation begins. The person who complies with the pre-filing requirements RCRA imposes gives the statutory system a chance to work. Furthermore, at the time the suit is filed, the latter person is seeking precisely the injunctive relief that § 6972(a)(1)(B) authorizes. Just because the person attempts to mitigate damages and clean up the property sooner rather than later changes neither of those facts. A look at the pre-filing requirements helps to show why the two cases should be treated differently under the statute.

RCRA imposes several detailed requirements on potential plaintiffs who want to bring suit under its citizen suit provision. A citizen plaintiff must provide notice to the potential defendant and wait 60 days before actually filing suit, so that the defendant may act on its own initiative to clean up the site and thus avoid the costs of litigation to

the parties and the environment. See 42 U.S.C. § 6972(b), (c). In the *Meghrig* situation, a jump-the-gun plaintiff frustrates this important purpose. In the case before us, in contrast, Avondale fulfilled all of the requirements for filing suit and the defendant, Amoco, indicated that it intended to contest its liability, as it was entitled to do. Avondale therefore filed its complaint on May 8, 1996, seeking declaratory and injunctive relief—precisely the forms of relief that § 6972(a)(1)(B) authorizes. Shortly thereafter, Avondale uncovered some corroded underground storage tanks ("USTs") on the site, which were filled with a gasoline and water mixture. It also found petroleum in the soil at concentrations exceeding state cleanup levels, and it found petroleum in perched groundwater, which acted as a subterranean pathway for off-site migration. An Amoco representative who was present when Avondale uncovered and removed the USTs commented at the time, "These are probably our USTs."

Only then, after suit was filed and after it realized the gravity of the situation and the potential for further spreading of the hazardous material, did Avondale undertake cleanup measures. It did so (as it was required to do) in accordance with the Illinois Pre–Notice Site Program, which is administered by the Illinois Environmental Protection Agency ("IEPA"). IEPA approved a level of remedial action that met state objectives for circumstances in which groundwater is contaminated and, significantly, off-site migration is likely. On November 20, 1996, IEPA issued a No Further Remediation Letter that released Avondale (but not Amoco) from further responsibility under state law. The letter did not address any action with respect to contaminants not mentioned in the plan or contaminants that had migrated to other sites. Amoco then moved for summary judgment, on the ground that Avondale had foolishly lost its RCRA right to relief by cleaning up the site and preventing any future migration.

While it agrees that the Supreme Court's decision in *Meghrig* did not address the precise question before us, the majority has chosen to extend *Meghrig* to our situation.

This is a step I would not take. In *Meghrig,* the question before the Supreme Court was, in its own words:

> whether § 7002 of the Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. § 6972 (1988 ed.) authorizes a private cause of action to recover the prior cost of cleaning up toxic waste that does not, at the time of suit, continue to pose an endangerment to health or the environment.

516 U.S. at 481, 116 S.Ct. 1251. It answered that question in the negative, for several reasons. First, it noted that the language of § 6972 refers to mandatory and prohibitory injunctions. This could not encompass an award of *past* cleanup costs, the Court held, whether they were labeled "equitable restitution" or "damages." In making this connection, it contrasted the broader language of the citizen suit provision found in the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9659(c), and found that the lack of language in RCRA permitting recovery of past cleanup costs was a clear sign from Congress about the scope of the two laws. Second, the Court pointed out that the need for imminent action implicit in the RCRA scheme has plainly passed for a parcel that has been cleaned up, when the only remaining dispute is about money. RCRA also lacks a statute of limitations—a serious concern if one is talking about *past* expenditures, as opposed to something that happens *after* suit is filed—and it does not contain an express provision requiring that the response costs sought must be reasonable.

At the end of its opinion, the Court emphasized that its ruling was not intended to address the distinct question before us today. Again, it is best to let the Court speak for itself:

> Without considering whether a private party could seek to obtain an injunction requiring another party to pay cleanup costs which arise after a RCRA citizen suit has been properly commenced, ... or otherwise recover cleanup costs paid out after the invocation of RCRA's statutory process, we agree with the Meghrigs that a private party cannot recover the cost of a

past cleanup effort under RCRA, and that KFC's complaint is defective for the reasons stated by the District Court.

516 U.S. at 488, 116 S.Ct. 1251 (citation omitted). In my view, when the Supreme Court cautions us not to interpret its decision in a certain way, we should take heed. The language just quoted makes it clear that the Court saw distinctions between the recovery of pre-filing cleanup costs and the recovery of post-filing cleanup expenses. Here, when Avondale filed its suit, it was plainly eligible for an injunction requiring Amoco to clean up the site (assuming, obviously, that it could prove Amoco's liability on the merits). At that point, § 6972 empowered the district court not only to order responsible parties to clean up hazardous waste sites, but also "to order such person to take such other action as may be necessary." 42 U.S.C. § 6972. This is hardly what one would call constraining language. To the contrary, it indicates to me that once the court's equitable jurisdiction was properly invoked, the full range of equitable remedies was available to the court. If the plaintiff found it necessary to clean up some or all of the property while the suit was pending, the court could order the wrongdoer to make equitable restitution of that amount by which it had been unjustly enriched. In this context, it is important to note that the measure of unjust enrichment would not necessarily be equal to the amount the plaintiff spent. If a property owner took actions that the court would not have required of the wrongdoer, whether those were extra studies, remediation to standards that were too strict, or wasteful scheduling, those actions would not have unjustly enriched the wrongdoer, and thus there would be no call for equitable restitution. (A damages remedy, in contrast, would put the plaintiff in the position it would have enjoyed had it not been for the wrong, which is quite a different matter.) I read the Court's rejection of equitable restitution in *Meghrig* to mean only that one cannot avoid RCRA's pre-filing requirements and re-label a damages claim as restitution, and remain true to the language of the statute.

Nothing in *Meghrig* answers another important question, which also points in the direction of allowing the present action. It provides no guidance about whether the category of "past cleanup efforts" for which private citizens cannot recover costs should be defined by reference to the time at which the suit is filed or the time judgment is entered. The choice of one approach over the other is not without consequence. By definition, the hazardous waste sites to which RCRA applies pose an "imminent and substantial endangerment to health or the environment," and therefore the extra time that passes between the filing of a lawsuit and the issuing of a cleanup order may often serve to aggravate an already precarious situation. We should not be blind to the realities of litigation, and one of those realities is that with today's crowded dockets it takes time even to demonstrate an entitlement to a preliminary injunction. Thus the court's holding is particularly ironic because it essentially finds that a statute designed to remedy imminent and substantial environmental hazards must on occasion operate to exacerbate these hazards rather than to ameliorate them. Foot-dragging is hardly unknown in environmental litigation, whenever a defendant believes that it will be better off if it delays the progress of the case, where losing later simply means it will have to pay later. As the court envisions RCRA's statutory scheme, defendants have an extra incentive to stall because the longer the lawsuit runs, the more likely it is that another party will as a practical matter be forced to take it upon itself to clean up the defendants' messes. In the absence of a clear signal from Congress and the Supreme Court that we are forced to this pass, I cannot read the law this way.

Instead, in my view, if a citizen plaintiff has fulfilled all of the statutory requirements to bring suit under § 6972 and has filed such an action, RCRA permits the plaintiff to clean up the environmental hazard during the pendency of the lawsuit and, upon a finding of liability against the defendant, obtain an order from the court requiring the defendant to pay the plaintiff an amount equal to the cost the court would have imposed on the defendant for clean-up. I therefore respectfully dissent from this part of the judgment of the court.