In the

# United States Court of Appeals

### For the Seventh Circuit

No. 01-4211

ALBANY BANK & TRUST COMPANY,
not individually, but solely as Trustee
under Trust No. 11-4067,

*Plaintiff-Appellant*,

*v.*

EXXON MOBIL CORPORATION, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6353—**George W. Lindberg**, *Judge*.

ARGUED JUNE 5, 2002—DECIDED NOVEMBER 8, 2002

Before FLAUM, *Chief Judge*, and DIANE P. WOOD and WILLIAMS, *Circuit Judges*.

DIANE P. WOOD, *Circuit Judge*. Defendant Exxon Mobil Corporation (Exxon) owns a gas station in Calumet City, Illinois, that released petroleum from an underground storage tank. Exxon reported the spill to plaintiff Albany Bank & Trust Company (Albany), owner of an adjacent property, and requested access to Albany's property for the purpose of investigating whether petroleum had seeped onto that land as well. Albany refused. Instead, it sued Exxon and its board of directors alleging various

violations of state and federal law. The district court dismissed the complaint on the ground that Exxon had no duty under federal law to remediate pollution on Albany's property prior to investigation and that Exxon was prevented from investigating by Albany itself. We reverse and remand for further proceedings.[1]

# I

There is little more to the facts than what we have already stated. On July 8, 1999, Exxon reported a petroleum release at its Calumet City facility to the Illinois Environmental Protection Agency (IEPA). In December 2000, Exxon's agent, Handex Environmental (Handex), requested access to investigate petroleum releases that might have migrated onto Albany's property. Albany, through its attorney, responded with a request that Exxon enter into an access agreement under which it would make a commitment to remove any contamination discovered on the property as a result of the release and to reimburse all of Albany's expenses in obtaining remediation, including attorneys' fees. Exxon was willing to agree to warrant its investigative work, but it refused to sign the broad agreement Albany had demanded. The parties negotiated for several months, but they never reached agreement on access for Exxon or Handex.

Albany instead conducted its own investigation, discovering high levels of MTBE and benzene in the property's soil and groundwater. Believing the contamination migrated from the gas station, it initiated this action under the citizen suit provision of the Resource Conservation

---

[1] We are not sure why the members of the board of directors were also named, but this question can await further development on remand.

and Recovery Act (RCRA), 42 U.S.C. § 6972, and added claims under Illinois statutory and common law. On the RCRA claim, Albany sought both an injunction compelling Exxon to undertake immediate remediation of all contamination on the property and payment of all attorneys' fees and costs Albany had incurred in the investigation. The district court dismissed the complaint.

## II

### A

We review a decision granting a motion to dismiss for failure to state a claim *de novo*, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 401 (7th Cir. 2001). Generally, matters outside the pleadings may not be considered on such a motion. See FED. R. CIV. P. 12(b). However, this court has permitted district courts to examine "[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); see also *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Relying on this authority, Exxon claims that we should consider the proposed access agreements and other correspondence it exchanged with Albany in reviewing the district court's ruling.

We reject Exxon's argument. In the first place, although cases like *Tierney* make it clear that documents attached to a complaint are part of it for all purposes, and suggest further that concededly authentic documents referred to in a complaint that are central to a claim may also be consulted on a motion under Rule 12(b)(6), the converse is also true: documents that are neither included in the plaintiff's complaint nor central to the claim should not

be considered on a motion to dismiss. *Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 775 (7th Cir. 2001). In any event, the district court did not rely in its ruling on any of the extra materials to which Exxon now points, and so it would be inappropriate for us to take them into account for the first time on appeal. In fact, even if one were to take a more liberal approach to materials outside the complaint than the one taken in *Berthold Types*, these documents could still not be considered, because they were neither attached to a pleading nor even to Exxon's motion to dismiss. Instead, Exxon introduced them in connection with a related motion to disqualify Albany's counsel. For these reasons, we will consider only the complaint in resolving this dispute.

**B**

Both Albany and Exxon contend that this is a simple case, albeit for entirely different reasons. Albany rests on the fact that its complaint alleges every element of a *prima facie* RCRA case, which means, in its opinion, that it was error to dismiss it as a matter of pleading. RCRA is a comprehensive statute governing the treatment, storage and disposal of hazardous waste. *City of Chicago v. Environmental Defense Fund*, 511 U.S. 328, 331 (1994). Its primary purpose is to limit the harmful effects of hazardous waste "to minimize the present and future threat to human health and the environment." 42 U.S.C. § 6902(b). A citizen is empowered under RCRA to bring suit "against any person, including . . . any past or present generator . . . who has contributed or who is contributing to the past or present handling . . . of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." *Id*. § 6972(a)(1)(B).

To make out a *prima facie* claim under RCRA, a plaintiff must allege (1) that the defendant has generated solid

or hazardous waste, (2) that the defendant is contributing to or has contributed to the handling of this waste, and (3) that this waste may present an imminent and substantial danger to health or the environment. *Cox v. City of Dallas*, 256 F.3d 281, 292 (5th Cir. 2001). Imminence does not require an existing harm, only an ongoing threat of future harm. *Id.* at 299. Albany's complaint makes each of these allegations. Its property is contaminated with petroleum waste at levels that substantially endanger public health, and it has alleged that Exxon generated and handled that waste. Therefore, Albany argues, the motion to dismiss should have been denied.

While Exxon admits that Albany has pleaded each of these elements, it contends that the complaint contains additional allegations defeating the RCRA claim, and thus that Albany has effectively pleaded itself out of court. Albany admitted that Exxon requested access to its property to investigate possible petroleum migration. Albany also conceded that it refused such access unless Exxon agreed to remove any contamination discovered on its property as a result of Exxon's spill and to reimburse Albany's expenses and attorneys' fees. Exxon claims that Albany's actions impeded investigation of potential contamination, and that Albany has thereby forfeited its right to have a federal court now order an investigation pursuant to RCRA.

Exxon relies on a single district court case as authority for this proposition. See *Aurora Nat'l Bank v. Tri Star Mktg., Inc.*, 990 F. Supp. 1020 (N.D. Ill. 1998). There the plaintiff owned property which it rented to Tri Star, a gas station operator. At the end of its lease, Tri Star removed its underground storage tanks, detected waste on the property, and offered to investigate and remediate. The plaintiff evicted Tri Star and refused to grant access for further investigation pending additional rental payments. *Id.* at 1025-26. The court in passing noted that "if

plaintiffs here have impeded the enforcement of environmental laws for their own financial advantage, they have not acted consistent with the purpose of the statute and a finding of liability would not be warranted." *Id.* at 1026. In the end, however, the court issued no definitive ruling on the matter, because there were factual disputes regarding whether the plaintiff had wrongfully evicted Tri Star and thereby impeded cleanup efforts or if Tri Star had instead dragged its feet on cleaning up the site. *Id.* at 1027.

Exxon contends that this case is like *Aurora* without the factual disputes. It has tried to investigate its spill in full compliance with the environmental laws but Albany has "impeded" its efforts. Exxon filed a report detailing the contamination on its own property with the IEPA and would have continued to comply with all necessary laws if only it could have accessed and investigated the property.

Despite Exxon's claims, we are not persuaded that any of the reasoning in *Aurora* is helpful for this case. (The decision is obviously not controlling on this court, as it comes from a district court. But we are happy to consult it for whatever analytical assistance it may offer.) In *Aurora*, the court was presented with at least the allegation that the plaintiff was seeking additional private payments unrelated to environmental law. Here, by contrast, Albany has requested (according to its complaint) only the removal of all contamination on its property resulting from the underground tank spill and the reimbursement of its expenses. RCRA itself permits both recovery of litigation costs and attorneys' fees, 42 U.S.C. § 6972(e), and injunctions ordering cleanup of waste "which may present an imminent and substantial endangerment to health or the environment." *Id.* § 6972(a)(1)(B).

Exxon seems to believe that these statutory provisions contradict the requirements Albany sought to impose in

its proposed agreement because Albany asked Exxon to remediate any contamination caused by its leak, even if the endangerment threat was not "imminent and substantial." Even if this is so, we cannot construe the agreement as an attempt by Albany to impede enforcement of the environmental laws for its own financial advantage. Simply because under some factual circumstances RCRA might not require the complete elimination of Exxon's pollution from Albany's property does not preclude the possibility that Illinois law might impose exactly this type of duty. RCRA specifically preserves state law remedies to fill gaps that may be left by its scheme. *Id.* § 6972(f). (In fact, if a dispute later arose about the adequacy of Exxon's remediation efforts, there would be time enough then to litigate the question whether it had to do any more, or if it had satisfied all federal and state law obligations.) Far from an attempt to impede law enforcement, Albany's actions here seem little more than a garden variety attempt to settle a dispute short of litigation. Failed settlement efforts normally do not prevent plaintiffs from later taking a case to court, and Exxon offers no justification for treating RCRA differently.

Indeed, though we need not reach the question, it is not at all clear that *Aurora* itself was rightly decided. RCRA is quite comprehensive. After granting courts the authority to order violators to take any action necessary to attain compliance, the statute details specific prerequisites to bringing a claim. A citizen must provide 90 days' notice to the defendant and various government officials of her intent to file suit. *Id.* § 6972(b)(2)(A). She may not proceed if either the Environmental Protection Agency (EPA) or a state agency is prosecuting an action against the defendant. *Id.* § 6972(b)(2) (B)-(C). The provision also may not be used to prevent operation of a waste disposal facility. *Id.* § 6972(b)(2)(D). The statute itself places no further restrictions on a citizen's ability to sue. It is uncon-

tested that Albany met those requirements: it gave notice of its intent to sue, no government agency is enforcing an action against Exxon, and this case does not pertain to a waste disposal site. *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610, 618-19 (7th Cir. 1998). When Congress has explicitly enumerated the preconditions to a given entitlement (here the right to sue), a court should not infer additional ones without evidence of contrary legislative intent. *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980). Though federal courts do place some penalties on obstinate plaintiffs who unjustifiably refuse to settle their disputes out of court, such as the cost-shifting provisions after an offer of judgment, see FED. R. CIV. P. 68, dismissal of a suit entirely seems to us a harsh penalty unlikely to have been intended by Congress. Albany has not declared that it will never allow Exxon on its property. Now that the litigation is underway, assuming Exxon still wishes to inspect the land for contamination, Albany will have to permit entry during discovery under FED. R. CIV. P. 34(a)(2). Under these circumstances, we find dismissal improper.

The district court also premised its decision on EPA regulations that require corrective action for the release of petroleum from underground storage tanks. 40 C.F.R. §§ 280.60-.67. These provisions require that releases first be investigated and that responsible parties next submit corrective action plans. Only then is cleanup required. *Id.* § 280.66. Exxon argues that since it has been given no opportunity to investigate or to submit a corrective action plan, it would be premature for a court to order it to begin cleanup or other remedial activities.

This too misses the point. EPA's regulations do not prohibit citizen suits to clean up petroleum contamination from leaking tanks. *Waldschmidt v. Amoco Oil Co.*, 924 F. Supp. 88, 92 (C.D. Ill. 1996). If the EPA or the IEPA wishes to bring a formal action to resolve responsibility for cleaning up the waste on Albany's property, this suit

would have to be dismissed. But assuming that an investigation, whether undertaken by the EPA, Exxon, or Albany, has yielded evidence of imminent and substantial contamination, the plain language of RCRA makes a remedy available to Albany. Furthermore, the conceded occurrence of the spill means that its claim for injunctive relief is not premature. *Cf. Avondale Fed. Sav. Bank v. Amoco Oil Co.*, 170 F.3d 692, 695 (7th Cir. 1999) (denying injunction where contamination was not currently an imminent and substantial danger).

## C

The district court also dismissed with prejudice any claims Albany was making under RCRA for reimbursement of the preliminary investigation expenses it has already incurred, relying on both our precedent and authority from the Supreme Court. In *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 488 (1996), the Supreme Court held that "a private party cannot recover the cost of a *past* cleanup effort under RCRA" whether the remedy is sought as "damages" or "equitable restitution." This court has understood *Meghrig* also to bar a plaintiff from recovering cleanup costs incurred after filing suit but prior to the entry of final judgment. *Avondale*, 170 F.3d at 694.

Albany argues that its claim for reimbursement of expenses it has already incurred may be pursued in spite of this daunting precedent. It claims to be seeking "investigation" costs rather than "cleanup" costs, and it alleges that *Meghrig* and *Avondale* bar only the latter. We cannot accept this proposition. The plain language of 42 U.S.C. § 6972(a) bars damages and "deliberately limit[s] RCRA's remedies to injunctive relief." *Avondale*, 170 F.3d at 694; see also *Nashua Corp. v. Norton Co.*, 116 F. Supp. 2d 330, 357-58 (N.D.N.Y. 2000); *Walls v. Waste Resource Corp.*, 761 F.2d 311, 315 (6th Cir. 1985). Since the *Meghrig* Court

refused to characterize cleanup costs as equitable restitution that could plausibly mesh with RCRA's injunctive remedies, and investigation costs are a mere subset of cleanup costs, it seems clear to us that "investigation" costs are no more recoverable than "cleanup" costs would be. (Indeed, if only one could be recouped, the equities might favor cleanup costs.) We declined to read additional remedies into RCRA in *Avondale* and again reject the invitation here.

Albany also contends that Rule 11 somehow requires that its investigation costs be reimbursed, but we fail to see the logic in this. True, parties must sometimes undertake costly investigations of facts in order to state complaints or defenses that will not be dismissed as frivolous, but there is certainly no general cost-shifting rule that requires the other side to reimburse those kinds of expenses. *Cf.* 28 U.S.C. § 1920 (detailing costs that may be taxed). While litigation costs and attorneys' fees may be awarded under 42 U.S.C. § 6972(e), nothing in this provision mandates recovery of the pre-litigation costs of determining whether a plaintiff should bring a suit in the first place.

Indeed, denying Albany damages for its own investigation efforts while still permitting it to go forward with its claim for injunctive relief seems to us the most equitably balanced reading of the statute. Nothing in the statute indicates that Albany's initial refusal to let Exxon on its property to investigate contamination, even if obstructionist or wrongheaded, should bar it from suing entirely. On the other hand, it does mean that Albany must bear the costs of whatever prelitigation investigation proves to be necessary prior to filing a good-faith complaint against Exxon. Were the rule otherwise, there would be a serious moral hazard problem: someone in Albany's position could undertake a "Cadillac" investigation, confident that it could shift its inflated costs to the other party. At

this stage of the game, as in other RCRA cases, past cleanup costs must be borne by the plaintiff, but the court may issue an injunction ordering future remediation to occur at the expense of the defendant, Exxon, if Exxon proves to be the one responsible for the environmental harm. *Avondale*, 170 F.3d at 694-95.

### III

After dismissing Albany's federal claim, the district court declined to exercise supplemental jurisdiction over the remaining state law claims. Because we are reversing on the RCRA count, the state law claims brought under both the Illinois Environmental Protection Act and common law must be reinstated as well, as they are related to the same set of operative facts. See *Armstrong v. Squadrito*, 152 F.3d 564, 582 (7th Cir. 1998). The judgment of the district court is REVERSED and the case is REMANDED for further proceedings.

A true Copy:

      Teste:

 

                              _____
                                *Clerk of the United States Court of*
                                    *Appeals for the Seventh Circuit*