**GREEN HILLS (USA), L.L.C., Plaintiff,**

v.

**AARON STREIT, INC. and Certified Environments, Inc., Defendants.**

No. CV–03–5778(DGT).

United States District Court, E.D. New York.

March 23, 2005.

Stella S. Liu, New York City, Walter G. Luger, Walter G. Luger & Associates, L.L.C., Parsippany, NJ, Mark D. Miller, Luger & Miller, P.C., Morristown, NJ, for Plaintiff.

Dean S. Sommer, Young, Sommer, Ward, Ritzenberg, Baker & Moore, LLC, Albany, NY, Steven J. Harfenist, Friedman, Harfenist, Langer & Kraut, Lake Success, NY, for Defendants.

*MEMORANDUM AND ORDER*

TRAGER, District Judge.

Green Hills, LLC brings this action against Aaron Streit, Inc. ("Streit's") and Certified Environments, Inc. ("CEI") (col-

lectively, "defendants"). Plaintiff alleges violations of the Resource Conservation and Recovery Act ("RCRA"), *see* 42 U.S.C. § 6972(a)(1)(B) and the New York Navigation Law, § 181, as well as contractual and various other common law provisions. Presently presented are defendants' motions to dismiss various counts of plaintiff's complaint as well as plaintiff's cross-motion to amend its complaint.

## Background

The following facts, taken from plaintiff's complaint, are deemed true for purposes of these motions to dismiss. Green Hills is a New York limited-liability company with its principal place of business in Brooklyn, New York; Streit's is a New York corporation with a principal place of business in New York, New York; and CEI is a Maryland corporation with a principal place of business in Silver Spring, Maryland, and an office in New York.[1] Complaint ("Cplt.") ¶¶ 3–6.

On July 23, 2001, Streit's sold Green Hills a 39,700 square foot parcel of land ("the Property") located in Brooklyn, New York. The Property, which Streit's had owned since 1959, was sold in "as is" condition. Cplt. ¶¶ 7, 10, 17. The land contained, *inter alia*, a paved storage lot and a single-story warehouse. Cplt. ¶ 9. Before the sale, Streit's represented to Green Hills that the land was free of any toxic or hazardous substances or underground fuel-oil tanks. Cplt. ¶ 16. Plaintiff hired CEI, an environmental consultant, which inspected the property before the sale and found no evidence of underground storage tanks or past use of fuel oil. Cplt. ¶ 20. Relying on Streit's representations and CEI's conclusions, Green Hills closed and took title to the property. Cplt. ¶ 22.

After purchasing the Property, Green Hills discovered that the warehouse had been heated with fuel oil from 1959 until sometime in 1973 and that there was at least one underground storage tank ("UST") on the Property. Cplt. ¶¶ 14, 23; *see also* Plaintiff's Memorandum in Opposition to Defendant Streit's Motion to Dismiss Complaint ("Pl.Opp.Mem.") at 3. Green Hills hired a second consulting firm, Environmental Compliance, Inc., which determined the presence of two USTs. Cplt. ¶ 25. Green Hills then hired a third firm, TRC Raviv, to excavate the tanks. TRC found that heating oil within both tanks had leaked onto the Property and that oil from one of the tanks had leaked into the groundwater. Cplt. ¶ 30. Because the tanks themselves could not be removed without jeopardizing the integrity of the building, they were filled with concrete. Cplt. ¶ 31. On July 31, 2003, TRC Raviv completed an assessment of the property (the "UST Report"), which it submitted to the New York State Department of Environmental Conservation ("NY DEC"). The UST Report details the costs and expenses incurred by Green Hills and makes recommendations regarding additional work. Cplt. ¶¶ 33–34. According to Green Hills, the investigation and remediation of the Property is incomplete. Pl. Opp. Mem. at 1.

On January 29, 2004, the N.Y. DEC approved the UST Report, with *minor conditions*. Pl. Opp. Mem. at 6. In April and June of 2004, TRC Raviv supervised the excavation of approximately 150 tons of heating oil-impacted soil and installed three shallow monitoring wells. Pl. Opp. Mem. at 6. According to plaintiffs, the clean-up process is incomplete and will

---

1. During oral argument, counsel for CEI explained that New York constitutes one of its principal places of business.

continue for at least two more years. Pl. Opp. Mem. at 6–7.

Green Hills presses one federal and numerous state-law claims against Streit's. All of Green Hills' claims against CEI, however, sound in state law. The issues to be resolved at this stage of the litigation are whether Green Hills can proceed with its federal cause of action (and, accordingly, state causes of action) against Streit's and, if so, whether this court has jurisdiction over the remaining state-law claims against CEI. If both questions are answered in the affirmative, there is an additional question concerning the potential conflict between the tort and contract claims asserted against CEI.

## Discussion

### (1)

### Claims Against Streit's

█ Streit's moves to dismiss the RCRA claim for lack of subject matter jurisdiction and for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), respectively. The "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996). The statute allows suits against a facility that "has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a). Under the statute, district courts are authorized to "to restrain any person [responsible for toxic waste], to order such person to take such other action as may be necessary, or both." *Id.*

█ A plaintiff proceeding under the RCRA can seek either a mandatory injunction, which requires a particular party to clean up or dispose of toxic waste, or a prohibitory injunction, which restrains a particular party from further violating the RCRA. In order to recover, the plaintiff must show that "(1) the defendant was or is a generator or transporter of solid or hazardous waste or owner or operator of a solid or hazardous waste treatment, storage or disposal facility, (2) the defendant has contributed or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste, as defined by RCRA, and (3) that the solid or hazardous waste in question may pose an imminent and substantial endangerment to health or the environment." *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 608 (2d Cir.1999). The statute provides injunctive relief, not damages; as the Supreme Court has ruled, "RCRA's citizen suit provision is not directed at providing compensation for past cleanup efforts". *Meghrig*, 516 U.S. at 484, 116 S.Ct. 1251.

█ Plaintiff concedes that, with regard to the remedies it seeks under the RCRA, its complaint is "not a model of clarity." *See* Pl. Opp. Mem. at 10. The complaint clearly seeks money damages for past clean-up efforts and only vaguely seeks injunctive relief. Streit's argues that this ambiguity warrants dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). Plaintiff counters that its complaint can be read to request injunctive relief and, alternatively, cross-moves for leave to amend its complaint. Given that, as explained *infra*, plaintiff alleges facts sufficient to raise a viable claim under the RCRA, the request to amend is granted. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) (noting frequency with which requests to file amended complaints are granted).

█ Streit's also moves for dismissal for failure to state a claim under Rule 12(b)(6) on grounds that plaintiff fails to allege an

imminent and substantial endangerment sufficient to bring a claim under the RCRA. *See* Def. Mem. at 12. The motion will be granted only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

■ "The Second Circuit has given an expansive construction to the RCRA." *87th St. Owners Corp. v. Carnegie Hill–87th St. Corp.,* 251 F.Supp.2d 1215, 1217 (S.D.N.Y. 2002) (collecting cases). "Significantly, congress used the word 'may' to preface the standard of liability: 'present an imminent and substantial endangerment to health or the environment.'" *Dague v. City of Burlington,* 935 F.2d 1343, 1355 (2d Cir.1991), *rev'd in part on other grounds,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) (citations omitted). "This is 'expansive language,' which is 'intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risk posed by toxic wastes.'" *Id.* (citing *United States v. Price,* 688 F.2d 204, 213–14 (3d Cir.1982)). "The statute authorizes injunctive relief 'to eliminate any risk posed by toxic wastes ... so long as the risk of threatened harm is *present.*'" *87th St. Owners Corp.,* 251 F.Supp.2d at 1218 (emphasis added) (citing *Dague,* 935 F.2d at 1356).[2]

Such a risk is certainly present here. Plaintiff's consultant, TRC Raviv, excavated and uncovered two USTs on the property that contained heating oil, finding that both USTs had leaked or discharged substances onto or into the Property and/or groundwater during Streit's ownership. At this stage of the remediation, the hazardous substances on the Property may pose and "imminent and substantial" endangerment to the nearby buildings, basements and surface water bordering the property and the surrounding environment.

Streit's does not contest that heating oil is considered a hazardous wasted under the RCRA or that, at some point, hazardous substances leaked into the surrounding soil and groundwater from one or both of the USTs. Rather, Streit's alleges that there is no longer any environmental danger or, in any event, the danger does not reach the required level to actually constitute an RCRA infraction. But it is by no means clear at this point that cleanup of the soil and surrounding environment is complete. Plaintiff still awaits a response from the N.Y. DEC on the adequacy of its remediation efforts. *Compare Avondale Federal Savings Bank v. Amoco Oil Co.,* 170 F.3d 692 (7th Cir.1999) (dismissal warranted when state agency issued "No Further Remediation Letter" indicating that remediation either had been completed or was unnecessary).

At this stage of the litigation, plaintiff has met the standard for bringing a claim under the RCRA. With regard to plaintiff's state-law claims[3] against Streit's, the only argument made by Streit's for dismissal, predicated upon the denial of the RCRA claim, is that all remaining claims must

---

2. The cases cited by the defendants do not all line up behind their position. For example, defendants rely on *Leister v. Black & Decker,* 117 F.3d 1414 (4th Cir.1997) (table) (unpublished decision), but the district court in that case *denied* a motion to dismiss the RCRA claim, though it ultimately dismissed the claim on summary judgment, which the Fourth Circuit affirmed.

3. Green Hills alleges the following state-law claims against Streit's: (1) violation of the New York Navigation law, (2) strict liability, (3) negligence, (4) fraud, (5) restitution, (6) contribution and (7) common-law indemnification. As explained *infra,* this court has jurisdiction over plaintiff's state-law claims against Streit's as well.

proceed in State court. Consequently, those state claims may proceed alongside the RCRA claim.

### (2)

### Plaintiff's Claims Against CEI

█ Having decided that plaintiff can proceed with its federal claim against Streit's, the next question concerns jurisdiction over the claims against CEI, all of which sound in state law, as well as the possible preclusion of those claims under the economic loss rule.

### (a)

### Jurisdiction

The exercise of supplemental jurisdiction by federal courts is governed by 28 U.S.C. § 1367. This case raises the particular question whether "pendent-party jurisdiction" obtains over plaintiff's claims against CEI given the lack of any independent basis of federal jurisdiction for those claims.[4] Section 1367 answers this question in the affirmative.

Section 1367 provides, in pertinent part, that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).[5] The statute

provides for certain exceptions in which a district court may decline to exercise supplemental jurisdiction.[6]

Before the enactment of Section 1367, the Supreme Court's decision in *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), generated great doubt regarding the viability of pendent-party jurisdiction. In *Finley*, the Supreme Court ruled that a district court "could not exercise pendent jurisdiction over claims involving parties who were not already parties to a claim independently within the court's subject matter jurisdiction." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 539–40, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002). Congress responded by enacting § 1367, which restores, *inter alia*, pendent-party jurisdiction and "effectively overrules *Finley*." *C.D.S. Diversified, Inc. v. Franchise Fin. Corp.*, 757 F.Supp. 202, 205 (E.D.N.Y.1991); *see also Raygor*, 534 U.S. at 539–40, 122 S.Ct. 999 (noting passage of § 1367 in response to uncertainty posed by *Finley* ); *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000) ("We have previously observed that 28 U.S.C. § 1367(a) responds to the Supreme Court's decision in *Finley* ... and thereby makes pendent party jurisdiction possible where the claim in question arises out of the same set of facts that give rise to an anchoring federal question claim against another party.").

---

**4.** The parties concede that there is no basis for diversity jurisdiction between Green Hills and CEI given that both can claim New York as a principal place of business.

**5.** There is little doubt that, under the statute, the pendent state-law claims against Streit's, which is already subject to federal jurisdiction, can be heard in tandem with the RCRA claim. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**6.** Subsection 1367(b) lists exceptions for civil actions where federal jurisdiction is based on

diversity of citizenship. Subsection 1367(c) lists circumstances in which federal courts may (but are not required to) decline jurisdiction: "(1) the [state] claim raises a novel or complex issue of State law, (2) the [state] claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Since the enactment of § 1367, the Second Circuit has taken an expansive approach to deciding questions of the exercise of supplemental jurisdiction, provided that there is present within a given controversy a predicate basis of original jurisdiction. *See Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 446–48 (2d Cir.1998).[7] It has ruled that § 1367 vests "federal courts [with] jurisdiction to decide claims over which they would not otherwise have jurisdiction, if those claims are so related to claims over which they do have jurisdiction that the claims form part of the same case or controversy." *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir.1998). Moreover, the circuit has held that a discretionary rejection of supplemental jurisdiction is proper "only if founded upon an enumerated category of subsection 1367(c)." *Itar–Tass,* 140 F.3d at 448 (2d Cir.1998).

■ In order to exercise supplemental jurisdiction, "the federal claims must be substantial and the federal and state claims must 'derive from a common nucleus of operative fact' and be such that a plaintiff 'would ordinarily be expected to try them all in one proceeding.'" *55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.,* 885 F.Supp. 410 (E.D.N.Y.1994) (citing *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Based on the jurisdictional statute and prior case law, numerous district courts within this circuit, precisely within the context of environmental law, have recognized their ability to exercise supplemental jurisdiction over pendent state-law claims. *See id.* (noting the court's "power to hear the pendent state claims" and exercising discretion to do so); *Commerce Holding Co., Inc. v. Buckstone,* 749 F.Supp. 441, 446 (E.D.N.Y. 1990) (stating that the court possessed power to exercise jurisdiction over pendant state-law claims but declining to do so because of a predominance of state-law issues). At a minimum, then, there is no bar to exercising jurisdiction. The remaining question is whether, in light of this court's ability to exercise it, it should do so.

Claims against both defendants "derive from a common nucleus of operative fact," *Gibbs,* 383 U.S. at 725, 86 S.Ct. 1130 (1966), namely, the environmental contamination of the Property. The state law claims, whether arising under contract or tort theories, are relatively straightforward and do not involve exceptionally complicated or difficult questions of law. These issues neither predominate over the federal claims nor appear so difficult or complicated that they ought not be resolved by this court. In this case, exercising jurisdiction appears to avoid bifurcated proceedings and "[n]eedless decisions of state law[, which] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Seabrook,* 153 F.3d at 72 (citing *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130) (internal quotation marks omitted).

CEI, for its part, does not argue a lack of jurisdiction.[8] On the contrary, it as-

7. The situation would be quite different if the federal claim against Streit's had been dismissed. Absent diversity jurisdiction, dismissal of the sole federal claim "would terminate the litigation, because dismissal of RCRA claim would entail dismissal of the pendent state claims." *87th St. Owners Corp.,* 251 F.Supp.2d at 1217. *See Seabrook v. Jacobson,* 153 F.3d 70, 71 (2d Cir.1998) (reversing district court for taking jurisdiction over complex state law claim after federal claims that were the sole source of jurisdiction had been dismissed); *see also Valencia v. Lee,* 316 F.3d 299, 304–07 (2d Cir.2003).

8. CEI briefed the issue of supplemental jurisdiction after it was asked to do so during the pre-motion conference.

serts that this court should exercise jurisdiction because "the Federal claim against Streit and the state law claims against CEI are derived from the same nucleus of facts" and that any differences in the causes of action (RCRA versus common law) "are subsumed by the fact that all of the parties to this litigation were involved in the same real estate transaction." Memorandum of Law in Support of Certified Environment Inc.'s Motion to Dismiss ("CEI Mem.") at 15. Jurisdiction over the RCRA claim having been established, all additional claims arising out of the same set of facts will be heard in this suit.

### (b)

### Economic Loss Rule

 CEI moves to dismiss three of plaintiff's state-law claims on the theory that they are barred by New York's recognition of the "economic loss rule." Specifically, CEI asserts that its relationship with Green Hills is purely contractual and that, under New York law, plaintiff's assertion of a breach of contract claim precludes additional claims for contribution, common-law indemnification and professional negligence/malpractice.[9]

 "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190 (1987) (collecting cases). This doctrine, known as the economic loss rule, holds that "a negligence action seeking recovery for economic loss will not lie." *County of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir.1984). The doctrine, if applicable, would bar plaintiff's claims for contribution, common-law indemnification and pro-

fessional negligence/malpractice. *See, e.g., Board of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987) (absent some form of tort liability, claims seeking contribution and indemnification not available); *Clark–Fitzpatrick*, 70 N.Y.2d at 390, 521 N.Y.S.2d at 657 (dismissing negligence claims for lack of violation of legal duty independent of the contract).

The economic loss rule is predicated "on the recognition that '[r]elying solely on foreseeability to define the extent of liability [in cases involving economic loss], while generally effective, could result in some instances in liability so great that, as a matter of policy, courts would be reluctant to impose it.'" *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 16 (2d Cir.2000) (citing *5th Ave. Chocolatiere, Ltd. v. 540 Acquisition Co.*, 272 A.D.2d 23, 28, 712 N.Y.S.2d 8, 13 (1st Dep't 2000)). The rule operates at the intersection "between contract and tort ... [and has] therefore been the subject of confusing and sometimes contradictory rulings by the federal and New York courts." *Joseph v. David M. Schwarz/Architectural Servs., P.C.*, 957 F.Supp. 1334, 1339–40 (S.D.N.Y. 1997).

The leading decision by the New York Court of Appeals on this matter is *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992). *See Joseph*, 957 F.Supp. at 1341 (*Sommer* represents "the most recent and comprehensive treatment of this issue by the New York Court of Appeals"). The *Sommer* court permitted the owner of a 42–story skyscraper in midtown Manhattan to bring breach-of-contract and negligence claims against a fire-alarm company that negligently handled an emergency

---

**9.** CEI does not challenge plaintiff's claims against them for restitution, breach of contract or contractual indemnification.

service call. The Court of Appeals noted that "merely alleging that the breach of a contract duty arose from a lack of due care will not transform a simple breach of contract into a tort," 79 N.Y.2d at 551, 583 N.Y.S.2d at 961, but recognized a number of circumstances in which legal duties independent of contractual obligations could exist. For instance, cases involving "[p]rofessionals, common carriers and bailees" constitute circumstances in which "policy, not the parties' contract . . . gives rise to a duty of due care." *Id.* at 551–52, 583 N.Y.S.2d at 961. Separate tort liability can also arise " 'from a breach of a duty distinct from, or in addition to, the breach of contract.' " *Id.* at 551, 583 N.Y.S.2d at 961 (citing *North Shore Bottling Co. v. C. Schmidt & Sons,* 22 N.Y.2d 171, 179, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968)). Finally, the Court of Appeals held that an independent action in tort might lie in cases of "abrupt, cataclysmic occurrence." *Id.*

The *Sommer* court considered several factors which led it to reject the economic loss rule: "(1) that the fire alarm company's duty of care derived not only from contract but from the nature of its services; (2) that the fire alarm stations are franchised and regulated by the City; (3) that the fire alarm company served a significant public interest; (4) that the breach of the fire alarm company's duties could have catastrophic consequences; (5) the nature of the fire alarm company's relationship with the skyscraper owner; and (6) the sudden manner of the loss." *Hydro Investors,* 227 F.3d at 17.

In *Hydro Investors,* the Second Circuit ruled that the economic loss rule would not bar a malpractice case brought by owners of a hydroelectric power plant against an engineering firm and an individual employed by the firm. The court noted that the damages involved were distinct from the underlying contractual agreement and

that the parties' relationship was not exclusively "economic in nature." *Id.* Noting conflicting rulings surrounding the economic loss doctrine, the court ruled that "the better course is to recognize that the rule allows such recovery in the limited class of cases involving liability for the violation of a professional duty. To hold otherwise would in effect bar recovery in many types of malpractice actions." *Id.*

CEI argues that the damages sought by Green Hills constitute nothing more than the benefit of the bargain it struck with CEI and that, unlike the situation in *Sommer* and *Hydro Investors,* there are no independently cognizable duties arising under state law in this case. Any "failure to detect the existence of environmental hazards," CEI maintains, "is not of the type which will affect parties not privy to the contract between Green Hills and CEI." CEI Mem. at 10. Moreover, CEI claims that Green Hills does not allege the violation of any professional duty existing outside the relationship created by contract. *Id.* at 12.

Plaintiff alleges that it has suffered injuries beyond those explicitly contemplated under contract, including injuries to its property as well as the surrounding groundwater (state property), not to mention expenses involved in the investigation and remediation process it has undertaken pursuant to various statutory and regulatory obligations. These claims involve more than a generalized "duty of due care" or mere "enforcement of the bargain." *Sommer,* 79 N.Y.2d at 552, 583 N.Y.S.2d at 961. The alleged professional negligence on the part of CEI has caused plaintiff to incur the additional expense in cleaning up waste that clearly affects parties not privy to the contract. The nature of the work performed by CEI has a significant public interest, and the breach of those duties could have dramatic consequences. Con-

sequently, this case, similar to *Sommer* and *Hydro Investors,* concerns "[p]rofessionals ... [who] may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties." *Sommer,* 79 N.Y.2d at 551, 583 N.Y.S.2d 957, 593 N.E.2d 1365. *See also Robinson Redevelopment Co. v. Anderson,* 155 A.D.2d 755, 757, 547 N.Y.S.2d 458 (3d Dep't 1989) ("We conclude that the contractual and professional relationship of plaintiff and defendants gave rise to two distinct wrongs, one contractual and the other grounded in professional malpractice, recoverable at law."); *Commerce & Industry Ins. Co. v. Vulcraft, Inc.,* No. 97 Civ. 2578, 1998 WL 823055, at *12 (S.D.N.Y. Nov. 20, 1998) (rejecting application of economic loss rule when claim "is in substance one for professional malpractice, and that obligation is distinct from any contract into which the parties may have entered"). Accordingly, Green Hills can proceed with claims sounding in both contract and tort.

## Conclusion

For the foregoing reasons, the motion by Streit's to dismiss plaintiff's RCRA and state-law claims is dismissed. CEI's motion to dismiss various state-law claims based on the economic loss rule is dismissed as well. Plaintiff's cross-motion to file an amended complaint is granted.